MoIlvaine, J.
The principles of law in relation to the liability of a master for an injury to his servant while engaged in the performance of duties under his employment, have been so frequently considered and declared by this court, and upon such varied statements of fact, that one might be justified in assuming that the law upon this subject, in all its bearings, Iras been fully settled. The respective rights and duties of employer and employee, sound in contract. The employer implicitly engages to use reasonable care and diligence to secure the safety of the employee, and among other things, to exercise reasonable care in the selection of prudent fellow-servants. lie also engages that every one placed in authority over tire servant, with power to control and direct him in the performance of his duties, will exercise reasonable care in providing for his safety, whether such superior be a fellow-servant or not, in the ordinary sense. The superior, in his relation to the subordinate servant, is, in the language of Judge Day, in Railroad Co. v. Lewis, 33 Ohio St. 196, the alter ego of the master. This doctrine, which imputes to the master the negligence of a servant to whom he has delegated authority over other servants, has been firmly ingrafted in the jurisprudence of this state ever since the case of Little Miami R. R. Co. v. Stephens, 20 Ohio, 416. See also C. C. & C. R. R. Co. v. Keary, 3 Ohio St. 201; and L. S. & M. S. R. R. Co. v. Lavally, 36 Ohio St. 221, and cases therein cited.
On the other hand, the servant assumes all ordinary risks of the employment against which ordinary care on the part of the master does not provide: and among the risks thus assumed by the servant, are those which may result from the carelessness or negligence of fellow-servants. Indeed, in the case before us, it is not claimed by the defendant in error -that the railroad company should be held liable, if it -were free from negligence, actual or imputed; and it is conceded, that such would be the *670 case, if the engineer and himself were mere fellow-servants in a common employment. Nor is it denied by the railroad company, that it would be liable if the injuries of the defendant'in error were - caused by the carelessness of one of its employees, who was intrusted with power to control and direct the defendant in error in the discharge of his duties in their common employment.
The contention between the parties is not, whether a given proposition is or is not law; but rather as to a question of mixed fact and law; namely, whether such relation of superior and subordinate existed between the'engineer of the train and the defendant in error as rendered the plaintiff in error responsible for an injury to the latter, caused by the carelessness of the former. The case is one for the application, rather than the definition of legal principles. We must therefore ascertain the exact relation which existed between the engineer and the defendant in error.
They were both servants of the railroad company engaged in a common employment; to wit, the operation of a single train of cars. The service. of the engineer was confined to the care and management of the engine, the motive power of the train, while the defendant was employed upon the cars, and his duty, among other things, was to tighten and loosen the brakes upon the cars. Although the duties of these servants were not identical, yet as the services of each were necessary to the accomplishment of a single purpose, namely, the movement of the train, they were fellow-servants, in a common employment; so that, if this relation, and none other, existed between them, the risk of injury to either by the carelessness of the other was assumed by each, and the common master or employer would not be liable. See Whaalen v. M. R. & L. E. R. Co., 8 Ohio St. 249 ; Manville v. C. & T. R. R. Co., 11 Ohio St. 417; P., Ft. W. & C. Ry. Co. v. Devinney, 17 Ohio St. 198 ; Kumler v. Junction R. R. Co., 33 Ohio St. 150.
This brings us to inquire whether there was such relation of superior and subordinate existing between the engineer and brakeman as to render the common employer responsible for injuries to the latter caused by the negligence of the former. *671 The crew consisted of a conductor, engineer, fireman and two brakemen. Unquestionably the train was under the control of the conductor, and all the train hands were subject to his control and direction. By the rules of the company, “ Conductors are required to see that brakemen are attentive to duty. Two brakemen must, at all times, be stationed on the tops of the cars of each freight train, when the train is in motion.” “ The speed of freight trains, which must be governed by the use of brakes when descending grades, is not to exceed fifteen miles per hour.” “ Conductors of all trains aro required to keep a brakeman on the last car, while the train is in motion.” “Freight conductors are required to ride on a part of their train where they can see that their men attend to their duties, can signal them on descending grades and can assist in applying the brakes in case of danger.” “ Brakemen must use judgment in applying the brakes when approaching a station, and endeavor to stop the train at the right point without the necessity of the engine sounding the whistle.” These rules, as well as the weight of all the testimony, show that brakemen are under the general control and direction of the conductor.
Indeed, the only pretense, found in the testimony, for the claim of defendant in error, that brakemen are subordinate to the engineer of the train, is found in the fact, that it is the duty of brakemen to observe and obey certain signals given by the engineer, to wit: Rule 18. “ One long blast of the whistle is a warning of the approach of a train: one short blast is a signal for putting down brakes and stopping the train: two short blasts for relieving the brakes and starting the train: three, for backing the train.” It is contended that these signals are in the nature of orders or commands, which the engineer is authorized to give to brakemen, which they are bound to obey; and. hence, the relation of superior and subordinate is created. A majority of the court do not so understand either the purpose or effect of the rule. These signals are so named properly, and are intended to notify all concerned of the thing signified. They are addressed to the conductor as well as brakemen, and it is the duty of the con *672 ductor to see that brakemen perform the duty signified. This duty is imposed upon the brakemen by force of the rule itself, and not by virtue of any authority vested in the engineer over the brakeman. The signal is a mere notice. The rule is the order of the company to the brakeman directly. Suppose a train is signaled by a station agent, as this train was, to stop for orders. It thereby became the duty of the conductor, as well as of each employee on the train, to stop for orders; and yet, no one can contend that such station agent, who gives the signal, is the superior, and the train crew subordinate employees of the company, within the meaning of the rule under consideration. A variety of signals, under a variety of circumstances, are required to be given by different employees of the company, to signify that an occasion exists for the performance of a particular duty, but it would be absurd to hold that in each case, the employee giving the signal is a superior servant, to whom all others, to whom information is thus communicated, are subordinated; so that the company would be responsible to them for any act of negligence of the employee who gave the signal, whether such negligence was in giving the signal, or in the performance.of other duties.
For, it must be observed, that negligence or carelessness is not affirmed of the act of the engineer in giving either the signal to tighten the brakes or to loosen them. The only negligent and careless act charged against him, was in forcing the engine forward violently, without giving time to the brakemen to loosen the brakes. The signal informed the brakemen that the train was about to go forward. The rule is: “ Two short blasts for relieving the brakes and starting the train.” The matter of applying the steam to the engine, and starting the train forward, was under the control of the engineer alone, and although we think, upon the testimony, the act was recklessly performed and caused a very serious injury to the brakeman, it was, nevertheless within the risks assumed by the defendant in error when he engaged with the plaintiff in error to discharge the duties of brakeman on the train.
This conclusion of the court is fully sustained by the decision of the supreme court commission in P., Ft. W. & C. Ry. *673 Co. v. Lewis, 33 Ohio St. 196. That case was an action by a brabeman against the railroad company for an injury caused by the negligence of the engineer, and the negligent act complained of was in starting the train, while the brakeman was in a dangerous position, without giving the required signal. We refer to the very able opinion of Judge Day, without quoting from the case, further than the 4th proposition in the syllabus, which reads as follows: “ Where an engineer and brabeman were employed by a railroad company in operating the same train, and there was no evidence to prove that the brakeman was placed in,a position of subordination to the engineer, other than what may be implied from the rules of the company, requiring the engineer to give certain signals as “a notice” to apply or loose the brakes, and requiring the brakeman to manage the brakes “ according to circumstances and the signals of the engineer,” and placing the brakeman, while on the train, in subordination to the conductor:—Held, that the engineer and brakeman were servants of the company engaged in a common service; that the relation of superior and subordinate did not exist between them; and that, therefore, the company was not responsible to the brakeman for an injury occasioned by the negligence of the engineer.”
True, in the case before us, several witnesses testified that, on the road of plaintiff in error, brakemen are subordinated to the engineer of the train; but upon the whole record, it is quite evident that the information of the witnesses was based solely upon the rules above quoted in regard to the giving and obeying signals for setting or relieving brakes, so that, in point of fact, this case in this respect is exactly simular to Lewis’s case; and a majority of the court can see no good reason for overruling that decision.

Judgments reversed a/nd cause remanded.